## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHAD RILEY and
MARK PHILLIPS,

        Plaintiffs,

  v.

MARK LUSK,

        Defendant.

No. 4:19-CV-00335

(Judge Brann)

## MEMORANDUM OPINION

### JULY 29, 2019

## I. BACKGROUND

On February 27, 2019, Plaintiffs, Chad Riley and Mark Phillips, filed a one count First Amendment Retaliation complaint against Defendant Mark Lusk. On May 24, 2019, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1] The motion is now ripe for disposition; for the reasons that follow, the motion is granted. Plaintiffs will be provided leave to amend the complaint.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon

---

[1] ECF No. 7.

which relief can be granted." A motion to dismiss "tests the legal sufficiency of a pleading"[2] and "streamlines litigation by dispensing with needless discovery and factfinding."[3] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[4] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[5]

Following the Roberts Court's "civil procedure revival,"[6] *Bell Atlantic Corporation v. Twombly*[7] and *Ashcroft v. Iqbal*[8] tightened the standard that district courts must apply to 12(b)(6) motions.[9] Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has

---

[2]  *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).

[3]  *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[4]  *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[5]  *Neitzke*, 490 U.S. at 327.

[6]  Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316, 319-20 (2012).

[7]  550 U.S. 544 (2007).

[8]  556 U.S. 662, 678 (2009).

[9]  *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[10]  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[11]  *Iqbal*, 556 U.S. at 678.

acted unlawfully."[12] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[13]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[15]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[16] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[17] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

---

[12] *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[13] *Twombly*, 550 U.S. at 556.

[14] *Iqbal*, 556 U.S. at 679.

[15] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[16] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[17] *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[18] *Iqbal*, 556 U.S. at 678.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[19]

Of additional consideration to this particular motion is the fact that Defendant has attached several documents, most pertinently, evidence of two pending two state court actions, to his motion.

"Ordinarily, a court may not consider documents outside the pleadings when deciding a motion to dismiss."[20]  Typically, to consider materials outside the complaint, a motion to dismiss must be converted to a motion for summary judgment.[21] But, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[22] A court may consider the full text of a document that is "integral to or explicitly relied upon" in a complaint without converting the motion to dismiss into a motion for summary judgment.[23]

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[24]  "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists

---

[19]  *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).
[20]  *Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) *citing In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).
[21]  *Id.*; Fed. R. Civ. P. 12(d).
[22]  *Faulkner*, 463 F.3d at 134.
[23]  *Burlington Coat Factory*, 114 F.3d at 1426.
[24]  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

regarding the authenticity or accuracy of the document."[25]  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[26]  In this matter, I find that these conditions have been met and will consequently consider Defendant's attachments.

**B.      Facts Alleged in the Complaint**

**1.      The Instant Federal Complaint[27]**

The facts alleged in the complaint, which I must accept as true for the purposes of this motion, are as follows.

Plaintiffs Chad Riley and Mark Phillips are, and were at all times material to the complaint, elected Lycoming County, Pennsylvania constables.  Defendant Mark Lusk is, and was at all times material to the complaint, the elected Lycoming County sheriff.

Constables receive work, such as criminal warrants and prisoner transport, from the sheriff's office.  Constables receive other work, such as serving civil process and "magisterial work,[28]  from the magisterial district judges. The complaint alleges that Sheriff "Lusk took it upon himself to 'oversee' the

---

[25]   *Id, See also e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C.Cir.2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001).
[26]   *Faulkner*, 463 F.3d at 134.
[27]   ECF No. 1.
[28]   *Id.* at ¶ 8.

constables in Lycoming County, to include providing payment for work done for the court and magisterial district judges' courts."[29]

In 2017, Lusk was running for re-election as sheriff, with Riley as his opponent and Phillips openly supporting Riley. After Lusk prevailed in the May 2017 primary election, the complaint alleges that all constables who supported Riley, including Phillips, were told that "their services were no longer needed," and to "turn in all of their warrants and equipment."[30] "As a direct result of the defendant's conduct, the plaintiffs were cut off from any work from the courthouse that came through the defendant's office" and "from the magisterial district justices' [sic] offices."[31] The complaint also alleges that one of the Lycoming County magisterial district judges told Riley that he was "being continually harassed by the sheriff's office not to use Chad Riley or Mark Phillips."[32] As such, the complaint further alleges that Lusk "in a de facto employer stance" retaliated against Plaintiffs in violation of the First Amendment to the United States Constitution.[33]

---

[29] *Id.* at ¶ 6.

[30] *Id.* at ¶ 11.

[31] *Id.* at ¶ 12-13.

[32] *Id.* at ¶ 14.

[33] *Id.* at ¶ 21.

## 2.     First State Court Action

A First State Court action is currently pending, proceeding on an amended complaint. A proposed second amended complaint had also been filed, but the Court of Common Pleas of Lycoming County, Pennsylvania has not yet granted or denied this motion. The pending motion to amend in the Court of Common Pleas makes disposition of the instant motion more difficult, as one of the considerations that I will discuss below is whether the action is proceeding with the same or different parties in the concurrent federal and state actions.

The amended complaint in the First State Court action is captioned as Riley and Phillips against Lusk and all the Lycoming County magisterial district judges.[34] The amended complaint is a declaratory judgment action alleging that as a result of the primary election challenge Plaintiffs lost work, and asks that court "to declare and adjudge that the [sic] Mark Lusk and the remaining defendants do not have the right to take away work from the constables, and declare that the [sic] Mark Lusk's actions against the petitioners null and void pursuant to Pennsylvania law."[35]

The proposed second amended complaint is Riley and Phillips against Lusk only. The allegations of the declaratory judgment action remain the same; the only changes to the proposed second amended complaint are that it eliminates the

---

[34]   ECF No. 8-2.

[35]   *Id.* at p. 5.

district magisterial judge defendants and adds a demand for compensatory and punitive damages.

### 3.  Second State Court Action[36]

A Second State Court action is also currently pending in the Court of Common Pleas of Lycoming County, proceeding on a February 4, 2019 amended complaint.  It is a one count defamation action by the two Plaintiffs here against the same Defendant here.   This action alleges that after Lusk's May 2017 primary election win, he began making defamatory statements about Plaintiffs to the local magisterial district court judges.  Specifically, the Second State Court action's amended complaint alleges that Lusk said that Riley committed "election law violations" and that Phillips had "health issues and had fallen asleep in court."[37] Riley and Phillips allege that they were denied work as a result of these allegedly defamatory statements.

### C.  Analysis

It is evident to this Court that Plaintiffs are struggling to discern causes of action against the Defendant.  It is unusual to find three separate causes of action between the same parties using the same "common nucleus of operative fact" where Plaintiffs' "claims are such that he would ordinarily be expected to try them all in one judicial proceeding, [] assuming substantiality of the federal issues, there

---

[36]  ECF No. 8-5.

[37]  *Id.* at ¶ 11-12.

is power in federal courts to hear the whole."[38]  Instead, Plaintiffs have undertaken

this odd piecemeal strategy that has resulted in them paying three separate filing

fees and proceeding in three separate actions in both state and federal court.

The result of Plaintiffs' inexplicable strategy, with multiple  filings, is that

this Court's time has been wasted by attending to complex federal abstention

doctrines and a state law procedural rules, in what should have been an simple

memorandum explaining that under existing Third Circuit precedent, Plaintiffs

have failed to state a claim for First Amendment retaliation, and thus will be given

one, and only one, opportunity to plead over.

Be that as it may, I take each argument for dismissal in turn.

### 1. *Younger* Abstention Doctrine

*Younger*[39] "and its progeny espouse a strong federal policy against federal-

court interference with pending state judicial proceedings absent extraordinary

circumstances."[40]  *Younger* is not a jurisdictional mandate, but a doctrine created

by its namesake case rooted in federalism, the concept of "a system in which there

is sensitivity to the legitimate interests of both State and National Governments,

and in which the National Government, anxious though it may be to vindicate and

protect federal rights and federal interests, always endeavors to do so in ways that

---

[38]  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

[39]  *Younger v. Harris*, 401 U.S. 37 (1971).

[40]  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, (1982).

will not unduly interfere with the legitimate activities of the States."[41]  The United

States Court of Appeals for the Third Circuit has instructed that when the dictates

of *Younger* are met, "district courts <u>must</u> abstain from exercising jurisdiction over

a particular claim where resolution of that claim in federal court would offend

principles of comity by interfering with an ongoing state proceeding."[42]

The United States Supreme Court in *Sprint Commc'ns, Inc. v. Jacobs*,[43]

clarified the requirements for *Younger* abstention and defined the limited

circumstances under which the doctrine can be invoked, noting: "federal courts

ordinarily should entertain and resolve on the merits an action within the scope of a

jurisdictional grant," and that "the pendency of an action in a state court is no bar

to proceedings concerning the same matter in the Federal court having

jurisdiction."[44]  "The boundaries for the application of the doctrine remain

somewhat elusive."[45]  "But from its inception, it has been clear that Younger

abstention only comes into play when an important state interest is implicated."[46]

---

[41]  *Younger* at 44.

[42]  *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir.2010) (emphasis added).

[43]  571 U.S. 69 (2013).

[44]  *Id.* at 588.

[45]  *Anthony v. Council*, 316 F.3d 412, 418 (3d Cir. 2003).

[46]  *Id.*

*Younger* abstention is warranted in only three[47] "exceptional circumstances": first, pending state law criminal charges; second, civil enforcement proceedings[48] (i.e., "quasi-criminal proceedings"); and third "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."[49]

Defendant in this matter argues that the third *Sprint* category applies. This third category requires that the state's interest in maintaining the proceeding in question uninterrupted by the federal judiciary be "of sufficiently great import."[50] I respectfully disagree.

This Court's resolution of a first amendment retaliation claim under the United States Constitution does not implicate any sort of "plausibly important state

---

[47] It is politely suggested that Plaintiff's counsel revisit *Younger* and its progeny, as her brief argues that *Younger* only bars a federal court from interfering with a pending state criminal proceeding.

[48] The threshold question in determining whether an action qualifies as a "civil enforcement proceeding" for *Younger* purposes is "that the state civil enforcement proceeding must be 'quasi-criminal' in nature." *ACRA Turf Club, LLC v. Zanzucchi*, 748 F.3d 127, 138 (3d Cir.2014) (*quoting Sprint*, 134 S.Ct. at 593). To determine whether a proceeding is "quasi-criminal" the Court must examine whether: "(1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges." *Sprint*, 134 S.Ct. at 592; *see also ACRA Turf Club*, 748 F.3d at 138. Additionally, the fact that "the State could have alternatively sought to enforce a parallel criminal statute" rather than use a civil enforcement proceeding weighs in favor of finding the civil proceeding quasi-criminal in nature. Id. In assessing whether the pending Commonwealth proceeding is quasi-criminal in nature, this Court will rely on prior Supreme Court decisions regarding "quasi-criminal" civil proceedings.

[49] *Sprint* at 588. (*quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ( "*NOPSI* ")).

[50] *Juidice v. Vail*, 430 U.S. 327, 335 (1977).

interest."[51]  Because "abstention from the exercise of federal jurisdiction is the

'exception, not the rule'"[52] I decline to dismiss this action based on *Younger*,  as

the proceedings do not fit into any of the three limited *Sprint* categories.[53]

### 2.    *Colorado River* Abstention Doctrine

Defendants next argue that abstention is appropriate under the *Colorado*

*River* doctrine because the actions in the Lycoming County Court of Common

Pleas and this federal action are parallel proceedings which demonstrate

"extraordinary circumstances" justifying abstention.  I respectfully disagree.

Federal courts have a "virtually unflagging obligation to exercise the

jurisdiction given them."[54]  The *Colorado River* doctrine, however, permits courts

to abstain from exercising jurisdiction by staying or dismissing a pending federal

action in favor of a parallel state court proceeding.[55] This abstention is based on

---

[51]   *Sprint* at 593.

[52]   *Id. citing Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) *quoting Colorado River*, *infra*, 424 U.S., at 813, 96 S.Ct. 1236.

[53]   If a proceeding falls within one of the three *Sprint* categories, then the Court must evaluate the matter using the three-factor test provided by *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982):  The *Middlesex* test states that District Courts may abstain when  three criteria are met: (1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims.[53]   "However, Younger abstention is not appropriate if the federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist ... such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted."

[54]   *Baykeeper v. NL Industries, Inc.*, 660 F.3d 686 (3d Cir. 2011) *citing Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

[55]   *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009).

"principles of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' "[56] Pursuant to a directive by the Supreme Court, lower federal courts must apply this doctrine cautiously and be mindful that abstention is an "extraordinary and narrow exception."[57]

The abstention analysis comprises a two-part inquiry: first, the court must decide whether the actions are indeed "parallel"; second, it must use a six-part test to decide whether the matters present the "extraordinary circumstances" contemplated by *Colorado River* and its progeny.[58]

I turn now to the threshold question. Generally, proceedings are "parallel" when they "involve the same parties and substantially identical claims, raising nearly identical allegations and issues."[59] In reaching this issue, the Third Circuit has noted that "it is important . . . that only truly duplicative proceedings be avoided. When the claims, parties or requested relief differ, deference may not be appropriate."[60] If the proceedings are not parallel, the district court must exercise jurisdiction and may not abstain from the federal action.

---

[56]  *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 83 (3d Cir.2011) *quoting Trent v. Dial Medical*, 33 F.3d 217, 223 (3d Cir.1994).

[57]  *Id. quoting Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

[58]  *See Nationwide*, 571 F.3d at 307 *citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983).

[59]  *Id.*

[60]  *Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37, 40 (3d Cir. 1980).

Here, although the facts and parties are the same, the disposition of the declaratory judgment and the defamation claims are sufficiently distinct from the first amendment retaliation claim. This "lack of identity of all issues necessarily precludes *Colorado River* abstention."[61] Put differently, for cases to be parallel, "there must be a likelihood that the state litigation will dispose of all the claims presented in the federal case."[62] Disposition of those two state actions certainly will not involve any finding of whether Sheriff Lusk improperly retaliated against Riley and Phillips based on their speech in violation of the First Amendment to the United States Constitution. Therefore, because the lawsuits are not parallel, this Court "lacks power to abstain."[63] Consequently, I need not decide whether extraordinary circumstances are present via the six-factor test.[64]

---

[61] *University of Maryland v. Peat Marwick Main & Co.,* 923 F.2d 265, 276 (3d Cir. 1991).

[62] *Nat. Collegiate Athletic Ass'n,* 25 F.Supp.3d at 571, *citing Flint v. A.P. Desanno & Sons*, 234 F. Supp. 2d 506, 510-11 (E.D.Pa. 2002).

[63] *See Ryan v. Johnson,* 115 F.3d 193, 196 (3d Cir. 1997) (noting that if the state and federal cases are not parallel, "the district court lacks the power to abstain").

[64] *R & R Capital LLC v. Merritt*, 426 Fed.Appx. 85, 89 (3d Cir. 2011) ("We need not delve into the multi-factor test because we conclude that the state and federal proceedings at issue here are not parallel."). Once proceedings are deemed to be parallel, a court shall then consider "whether 'extraordinary circumstances' meriting abstention are present." *Nationwide*, 571 F.3d at 308 *citing Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999). This determination requires consideration of the following factors: (1) Which court first assumed jurisdiction over property involved, if any; (2) Whether the federal forum is inconvenient; (3) The desirability of avoiding piecemeal litigation; (4) The order in which the respective courts obtained jurisdiction; (5) Whether federal or state law applies; and (6) Whether the state court proceeding would adequately protect the federal plaintiff's rights. *Moses H. Cone*,supra, 460 U.S. at 16.

In sum, and upon consideration of the *Colorado River* factors, I find that "exceptional circumstances" are not presented by this litigation.[65]

### 3. Waiver under Pennsylvania Rule of Civil Procedure 1020(d)

Pennsylvania Rule of Civil Procedure 1020 discusses the state's joinder rules. Subsection (a) deals with permissive joinder, whereas subsection (d) attends to, mandatory joinder. Rule "1020(d), [] generally prohibits splitting causes of action,"[66] and reads, as follows:

> (d) If a transaction or occurrence gives rise to more than one cause of action heretofore asserted in assumpsit and trespass, against the same person, including causes of action in the alternative, they shall be joined in separate counts in the action against any such person. Failure to join a cause of action as required by this subdivision shall be deemed a waiver of that cause of action as against all parties to the action.

This rule "requires a party to join all causes of action against the same defendant based on different legal theories arising out of the same factual transaction."[67] "The purpose of Rule 1020(d) is 'to avoid a multiplicity of suits and to ensure prompt disposition of all rights and liabilities of parties in a single

---

[65] *Moses H. Cone*, 460 U.S. at 25–26 ("[T]he task is to ascertain whether there exists 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction.").

[66] *Unitrin Auto & Home Ins. Co. v. Clayton Corp. of Delaware,* 2016 WL 8199315, at *3 (M.D. Pa. Apr. 20, 2016) (Jones J.) *citing State Farm Mutual Automobile Insurance Company v. Ware's Van Storage*, 953 A.2d 568, 572 (Pa. Super. Ct. 2008).

[67] *Harden v. City of Philadelphia*, 2006 WL 47386, at *10 (E.D. Pa. Jan. 9, 2006).

suit.'"[68]  "Of course, any cause of action joined must be one that is cognizable in a civil action against the defendant in the state court."[69]

The Court will leave this question to another day.  "The rule requires that all causes of action arising from the same transaction or occurrence be joined whether they sound in contract, tort, or both."[70]   Here, Defendant argues that Plaintiffs should have joined their retaliation claim brought under the United States Constitution with their defamation claim (clearly a tort) and /or their declaratory judgment claim. I am uncertain as to whether the Pennsylvania General Assembly intended federal constitutional claims to be waived if not joined with state assumpsit and trespass claims.  Neither party has briefed this nuanced issue of whether waiver applies because this constitutional claim was not brought with the defamation claim.

Moreover, the note to Rule 1020 states, "Note: Mandatory joinder is limited to related causes of action heretofore asserted in assumpsit and trespass. There is no mandatory joinder of related causes of action in equity."[71] Thus, again it is not clear if the declaratory judgment Plaintiffs seek is a demand for equitable or legal

---

[68]   *McAnany v. Home Ins. Co.,* 1992 WL 301585, at *2 (E.D. Pa. Oct. 15, 1992), *aff'd,* 998 F.2d 1003 (3d Cir. 1993) *quoting Hineline v. Stroudberg Electric and Supply Co*., 402 Pa.Super. 178, 182, (1991).

[69]   *In re Fleming*, 495 B.R. 68, 72 (Bankr. M.D. Pa. 2013).

[70]   McAnany, at *2-3, *citing Jones v. Keystone Insurance Co*., 364 Pa.Super 318, 325, 528 A.2d 177, 180 (1987).

[71]   Pa.R.Civ.P. No. 1020.

relief, as declaratory judgment can be either a legal or equitable remedy.  Again, neither party has briefed this issue.

Additionally, the Pennsylvania Rules of Civil Procedure allow for consolidation, as opposed to the drastic remedy of dismissal, based on waiver, when a court is faced with the same parties, issues, subject matter, and defenses. Despite this, neither party briefed this issue.

Pennsylvania Rule of Civil Procedure 213(a) states: "In actions pending in a county which involve a common question of law or fact or which arise from the same transaction or occurrence, the court on its own motion or on the motion of any party may order a joint hearing or trial of any matter in issue in the actions, may order the actions consolidated, and may make orders that avoid unnecessary cost or delay."  The Pennsylvania Supreme Court has explained, "in light of the compulsory joinder rules of the Pennsylvania Rules of Civil Procedure, see, e.g., Pa.R.Civ.P. 1020(d), there are few, if any, circumstances, in which separate actions would involve identical parties, subject matter, issues, and defenses, such that complete consolidation by a trial court could be contemplated under Rule 213."[72] A "court may choose to consolidate the discovery process for separate actions, …[or]in order that the separate actions proceed on the same time schedule, or before the same trial judge."[73]

---

[72] *Kincy v. Petro*, 606 Pa. 524, 531–33 (2010).

[73] *Id.*

Assuming, arguendo, that I find that the Pennsylvania General Assembly intended federal claims to be waived if not bring alongside tort claims, given that the defamation action by Riley and Phillips is still in the pleadings stage, it is not patently clear if a state court would find that they have waived the federal claim. Theoretically, Plaintiffs still have the opportunity amend their Court of Common Pleas complaint to include the First Amendment Retaliation claim, which Defendants could then remove to this Court. The parties could then litigate the issues on the merits, instead of arguing for or against procedural waiver.

Plaintiffs ignore the realities of the Pennsylvania procedural rules, and instead argue the substantive merits of the claim. Defendants ignore the nuances of the Pennsylvania procedural rules and attempt to cram this complex set of legal issues into a general, and possibly inapplicable, procedural argument. As such, I conclude that it would not be prudent to hold that the drastic remedy of waiver applies, and I will reserve this decision for another day.

### 4. Motion to Dismiss for Failure to State a Claim of First Amendment Retaliation

Riley and Phillips's complaint asserts a claim of Retaliation in violation of the First Amendment as incorporated by the Fourteenth Amendment. The First Amendment to the United States Constitution protects the right to free speech. Accordingly, the government may not retaliate when citizens exercise this Constitutionally protected right.

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right."[74] "Because government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that conduct or speech would otherwise be a lawful exercise of public authority."[75] "Thus, by engaging in retaliatory acts, public officials place informal restraints on speech 'allowing the government to produce a result which [it] could not command directly.'"[76] "Such interference with constitutional rights is impermissible."[77]

"Illustrating the observation that 'not every [government] restriction is sufficient to chill the exercise of First Amendment rights,' we have recognized a distinction between an adverse impact that is actionable, on the one hand, and a de

---

[74] *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000), *See ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) ("Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights"); *see also Pickering v. Board of Educ.*, 391 U.S. 563, 574 (1968) (noting that retaliatory acts are "a potent means of inhibiting speech").

[75] *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 415-416 (4th Cir. 2006), *citing Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000); *see also Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972) ("If the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited").

[76] *Suarez Corp. Indus.*, 202 F.3d at 685.

[77] *Id. citing Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

minimis inconvenience, on the other."[78] "Rather, a § 1983 retaliation plaintiff must demonstrate that the defendant's actions had some adverse impact on the exercise of the plaintiff's constitutional rights."[79] "[W]e must measure the adverse impact against an objectively reasonable plaintiff."[80] "To amount to retaliation, the conduct must be 'sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'"[81] "Because our analysis of the adverse impact is objective, it can be resolved as a matter of law."[82]

"[A] public official's malicious intent, taken alone, cannot amount to a retaliatory response."[83] "Illustrating the second *DiMeglio* [*v. Haines*] observation that not 'every restriction [is] actionable, even if retaliatory,'[84] we have recognized that some government actions, due to their nature, are not actionable even if they

---

[78] *Balt. Sun Co*., 437 F.3d at 416.

[79] *Suarez Corp. Indus*., 202 F.3d at 685, *See Wicomico County*, 999 F.2d at 785 ("In order to state a retaliation claim, Appellees are required to show that WCDC's actions adversely impacted these First Amendment rights.").

[80] *Balt. Sun Co*., 437 F.3d at 419.

[81] *Mun. Revenue Servs., Inc. v. McBlain*, 347 Fed. Appx. 817, 824 (3d Cir. 2009) (unpublished) *citing McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006).

[82] *Balt. Sun Co*., 437 F.3d at 416.

[83] *Balt. Sun Co*., 437 F.3d at 420, *citing Connick v. Myers*, 461 U.S. 138, 148-49, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983); *see also id*. at 143 (holding that, in the government employment context, public employers can reprimand or punish employees for their speech when that speech does not touch on matters of public concern); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 448-49 (4th Cir. 2004); *cf. Umbehr*, 518 U.S. at 675 (noting that retaliation "may be justified [i.e., unactionable] when legitimate countervailing government interests are sufficiently stron"").

[84] 45 F.3d 790 (4th Cir. 1995).

satisfy all the generally articulated elements of a retaliation claim."[85] "When the challenged government action is government speech, there is no retaliation liability -- even if the plaintiff can demonstrate a substantial adverse impact -- unless the government speech concerns 'private information about an individual' or unless it was 'threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow.'"[86] "Other courts, likewise, have held that there is no retaliation when the government's alleged retaliatory action was government speech."[87] "This limitation on the retaliation cause of action based on government speech is necessary to balance the government's speech interests with the plaintiff's speech interests."[88]

Recently, the United States Court of Appeals for the Third Circuit refined its precedent holding that a claim cannot be sustained against a defendant whose alleged retaliation is merely influencing a third-party to retaliate. In *Zaloga v. Borough of Moosi*c, the court stated:

> When a public official is sued for allegedly causing a third party to take some type of adverse action against plaintiff's speech, we have held that defendant's conduct must be of a particularly virulent character. It is not enough that defendant speaks critically of plaintiff or even that defendant directly urges or influences the third party to take adverse

---

[85] *Balt. Sun Co*., 437 at 416-417.

[86] *Id*. at 417, *citing Suarez*, 202 F.3d at 689.

[87] *Balt. Sun Co*., 437 F.3d at 417 *citing, Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998); *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997); accord Kirby, 388 F.3d at 450 n. 8.

[88] *Balt. Sun. Co*., 437 F.3d at 417, *citing Suarez*, 202 F.3d at 688-89.

action. Rather, defendant must 'threaten' or 'coerce' the third party to
act.[89]

Moreover, "when a public official's allegedly retaliatory acts 'are in the form of
speech,' the official's 'own First Amendment speech rights are implicated.'"[90]   It
is clear, then, that some form of coercion is required to establish a Constitutional
violation for attempting to influence a third party to retaliate.[91]  Even threat of
litigation is not sufficiently coercive.[92] "Strongly urging or influencing, but not
coercing, a third party to take adverse action affecting a plaintiff's speech did not
violate plaintiff's constitutional rights."[93]  In retaliation cases involving speech
against speech there should be a "threshold of measurable harm required to move
government response to public complaint from the forum of free speech into
federal court."[94]

   This action is nearly factually indistinguishable from *Zaloga* which
reinforces the severity of the coercion necessary in First Amendment retaliation
through a third-party claim.  Here, "[Lusk's alleged] efforts to pressure [district
magisterial judges] were not even coercive enough to achieve their desired

---

[89]   841 F.3d 170, 176 (3d Cir. 2016) *quoting McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir.
2001).

[90]   *Id. quoting Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000).

[91]   *See R.C. Maxwell Co. v. Borough of New Hope,* 735 F.2d 85 (3d Cir. 1984).

[92]   *Id.*

[93]   *McLaughlin* at 573.

[94]   *Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011).

effect."[95]  "By [Riley and Lusk's] own admission, [one of the district magisterial judges told the duo that he refused to] compl[y] with [Lusk's alleged]  wishes by [continuing to give the duo civil process work.]"[96]

The procedural posture of *Zaloga*, however, was different from the matter at hand, as *Zaloga* was before the court on summary judgment.  I am constrained accordingly.

## III.    CONCLUSION

Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is granted. However, it is firmly established law in this Circuit that leave to amend should be freely granted. As such, Plaintiff will be given fourteen days from today's date to file an amended complaint.  If no amended complaint is filed, the action will be summarily dismissed pursuant to Federal Rule of Civil Procedure 41(b).

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[95]   *Zaloga*, at 176.

[96]   *Id.*